IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DONOVAN E. CRAWFORD,

      Plaintiff,

v.

HARVARD PUBLISHING
COMPANY, HARVARD BUSINESS
REVIEW, HARVARD
UNIVERSITY,

      Defendants.

1:16-cv-2463-WSD

## OPINION AND ORDER

This matter is before the Court on Defendants Harvard Business School Publishing Corporation ("HBSP") and President and Fellows of Harvard College's ("Harvard") (collectively, "Defendants") Motion to Dismiss [3], and Plaintiff Donovan E. Crawford's ("Plaintiff") Motion for Default Judgment [6].[1]

---

[1] Plaintiff's Complaint [1.1] misnames HBSP as Harvard Publishing Company, and misnames Harvard as Harvard University. ([3.1] at 1). Named defendant Harvard Business Review is a publication of HBSP, not a person or entity. ([1] ¶ 12). In view of Plaintiff's *pro se* status, the Court construes Plaintiff's allegations against Harvard Business Review as allegations against HBSP.

## I.   BACKGROUND[2]

Plaintiff, a Georgia resident, is a "Canadian trainer Banker" who previously worked as chairman and chief executive officer at Century National Bank ("CNB"), a Jamaican financial institution.  (Compl. ¶¶ 4, 6, 10).  HBPS, a Harvard subsidiary, is a non-profit corporation organized under the laws of Massachusetts, with its principal place of business in Massachusetts.  (Allan A. Ryan Decl. [3.2] ("Ryan Decl.") ¶ 3).  HBPS maintains an online database of educational materials, including case studies that are used for teaching business school classes.  (Ryan Decl. ¶¶ 3, 5).  These materials can be accessed and purchased through two websites.  (Ryan Decl. ¶ 8).  "The vast majority of those who access these online materials are either faculty members, universities or their representatives."  (Ryan Decl. ¶ 10).

On December 1, 2006, HBPS made available for purchase a case study entitled "Bank Failure in Jamaica" (the "Case Study"), authored by Jenifer Daley ("Daley").  (Compl. ¶ 10).  Daley wrote the Case Study for the Richard Ivey

---

[2]   In view of Defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court, in this background section, relies principally on the allegations in Plaintiff's Complaint [1.1].  The Court also considers evidence submitted by Defendants to challenge the Court's personal jurisdiction over them.  See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010).

School of Business at the University of Western Ontario ("Ivey"), and "solely to provide material for class discussion."  ([3.2] at 9).  The Case Study discusses the difficulties experienced by Jamaican financial institutions in the 1990s.  In a paragraph dealing with "incentive structure facing bank management," the Case Study offers the following commentary on Plaintiff's involvement with CNB:

> From the outset Don Crawford, managing director, had exercised strong, direct influence on the policies, management and operations of CNB.  By 1989, Crawford had also assumed the role of chairman of the board.  His charisma and salesmanship were evidenced in the relatively rapid growth of the branch network within the urban as well as rural areas over a relatively short period of time.  However, it was precisely those personal characteristics that were said to have contributed to the demise of the bank as they were said to have got in the way of professional banking ethics.  An audit conducted by the [Bank of Jamaica] in 1993 revealed that, in some cases, credit had been granted on the sole instruction of the managing director and with minimal, if any, documentation.  Additionally, the cash resources were inflated by deposits used to secure loans to the personal companies of the managing director.  These deposits did not qualify as liquid assets, but the true status had not been reflected in the accounts and had served to conceal a growing liquidity problem.

([3.2] at 14; Compl. ¶ 10).

Plaintiff alleges this "entire statement is preposterous, outrageous and patently false," and that its publication has caused him financial loss, loss of reputation, and "injury to his feelings."  (Compl. ¶ 11, 17, 19-20).  Plaintiff alleges that, apparently as a result of the Case Study, he has not, "[d]uring the last ten years," been "eligible as a Business Executive to secure financial support or

3

engage [him]self in any meaningful business venture requiring funding or social interactions." (Compl. ¶ 5). Plaintiff asserts that Defendants published the Case Study with "malice, hatred and ill will toward plaintiff and the desire [to] injure [him]," including because Defendants did not interview Plaintiff before making the Case Study available online. (Compl. ¶ 18). In 2016, at Ivey's request, HBSP removed the Case Study from its archive collection.

On June 7, 2016, Plaintiff, proceeding *pro se*, filed his Complaint [1.1] in the Fulton County Superior Court. The Complaint asserts claims for libel, intentional infliction of emotional distress, and tortious interference. Plaintiff seeks a declaratory judgment, damages, attorneys' fees, and litigation expenses. (Compl. ¶ 23). On July 7, 2016, Defendants filed their Notice of Removal [1], removing the case to this Court. On July 14, 2016, Defendants filed their Motion to Dismiss, seeking to dismiss Plaintiff's Complaint for lack of personal jurisdiction and for failure to state a claim. On July 26, 2016, Plaintiff filed his Motion for Default Judgment.

**II.   DISCUSSION**

    A.   <u>Personal Jurisdiction Principles</u>

A plaintiff's complaint must establish a prima facie case of personal jurisdiction over a defendant. <u>Diamond Crystal Brands, Inc. v. Food Movers Int'l</u>,

4

Inc., 593 F.3d 1249, 1257 (11th Cir. 2010).  If the plaintiff makes its prima facie showing of personal jurisdiction, the defendant may challenge the allegations of jurisdiction with evidence.  See id.  Upon the defendant's submission of jurisdictional evidence, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  Id. (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)); accord Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).  Where there are conflicts between the evidence, the court makes all reasonable inferences in favor of the plaintiff.  Diamond Crystal, 593 F.3d at 1257; Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists:  the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  Mazer, 556 F.3d at 1274.

"The Due Process Clause requires that the defendant's conduct and connection with the forum State be such that he should reasonably anticipate being haled into court there."  Diamond Crystal, 593 F.3d at 1267 (internal quotation marks omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474

(1985)). "The heart of this protection is fair warning" to the defendant. Id.; see Licciardello v. Lovelady, 544 F.3d 1280, 1284 (11th Cir. 2008) ("The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has 'fair warning' that he may be subject to suit there."). "Therefore, states may exercise jurisdiction over only those who have established certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Diamond Crystal, 593 F.3d at 1267 (quoting Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984)). "The presence of minimum contacts raises a presumption that the court may constitutionally exercise jurisdiction" and, to rebut that presumption, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1221 n.29 (11th Cir. 2009) (internal quotation marks omitted) (quoting Burger King, 471 U.S. at 477).

    B.    <u>Analysis</u>

To determine whether the Due Process Clause allows a court to exercise personal jurisdiction over nonresident defendants charged with intentional torts, such as Defendants are here, "[t]he Eleventh Circuit applies the Calder effects

6

test." Gregory v. Mihaylov, No. 1:12-cv-2266, 2013 WL 75773, at *6 (N.D. Ga. Jan. 4, 2013); see Oldfield, 558 F.3d at 1221 n.28.  Libel, intentional infliction of emotional distress, and tortious interference are considered intentional torts. Tanisha Sys., Inc. v. Chandra, No. 1:15-cv-2644, 2015 WL 10550967, at *10 (N.D. Ga. Dec. 4, 2015); Gregory, 2013 WL 75773, at *6; Haysman v. Food Lion, Inc., 893 F. Supp. 1092, 1111 (S.D. Ga. 1995); Hain v. Allstate Ins. Co., 471 S.E.2d 521, 522 (Ga. Ct. App. 1996).  "Stated in its broadest construction, the effects test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated."  Oldfield, 558 F.3d at 1221 n.28.  "Under the effects test, acts expressly aimed by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not."  Licciardello, 544 F.3d at 1286 n.6.

In Calder, a California actress brought suit in California, asserting that she was libeled in an article written and edited in Florida.  Calder v. Jones, 465 U.S. 783 (1984).  The article was published by the National Inquirer, a Florida corporation.  The Supreme Court, applying the effects test, found that the California court had personal jurisdiction over the article's writer and editor.

Although the writer and editor were both Florida residents, the allegedly libelous story "concerned the California activities of a California resident."  Calder, 465 U.S. at 788.  The story was "expressly aimed at California," "impugned the professionalism of an entertainer whose television career was centered in California," "was drawn from California sources," and "the brunt of the harm . . . was suffered in California."  Id. at 788-89.  The Supreme Court found that the defendants "knowingly cause[d] the injury in California," where the National Inquirer had its largest circulation, including because defendants knew the brunt of the injury would be felt there.  Id. at 790.[3]  The court stated, "[i]n sum, California is the focal point both of the story and of the harm suffered."  Id. at 789.

Plaintiff asserts intentional tort claims against Defendants, but fails to establish personal jurisdiction here under the Calder effects test.  The undisputed facts are that the Case Study was written in Canada "solely" for a Canadian business school, and focuses exclusively on events in Jamaica at a time when Plaintiff apparently resided there.  The Case Study does not refer to Georgia or to conduct in that state.  The Case Study's brief reference to Plaintiff is limited to his banking activities in Jamaica.  Defendants did not "expressly aim" the study at

---

[3]     The National Inquirer sold, in California, more than 600,000 copies of the magazine containing the libelous article.  Jones, 465 U.S. at 784 n.2.  The State with the next highest circulation was New York, with 316,911.  Id.

Georgia or have any reason to believe that any harm, far less the "brunt of the harm," would be felt there. Jones, 465 U.S. at 788-90.[4]  Defendants simply made the Case Study available for online purchase. Only ten copies of the Case Study were purchased by Georgia residents between 2006 and 2016. (Ryan Decl. ¶¶ 11-12). The only connection to this state is the fact that Plaintiff now lives in Georgia, having moved here after living in Jamaica. "[T]he mere fact that [Defendants'] conduct affected plaintiff[] with [his new] connection[] to the forum state does not suffice to authorize jurisdiction." Walden v. Fiore, 134 S. Ct. 1115, 1126 (2014); see Ellis v. Jackson Nat. Life Ins. Co., No. 2:11-cv-1064, 2012 WL 3777150, at *7 (M.D. Ala. Aug. 30, 2012) ("For purposes of satisfying Calder's prerequisites, . . . there must be something more than the fact that a plaintiff feels the intentional conduct's effect in the forum state."). The facts here lead to the inescapable conclusion that the Court lacks personal jurisdiction over Defendants.

The lack of "traditional minimum contacts" with Georgia further supports that the Court lacks personal jurisdiction over Defendants. See Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1356 (11th Cir. 2013) (applying the "traditional minimum contacts test" in an intentional tort case involving trademark

---

[4] The Complaint does not allege that Defendants knew, or had any reason to believe, that Plaintiff had moved to Georgia.

infringement). The traditional minimum contacts test "assess[es] the nonresident defendant's contacts with the forum state and ask[s] whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." Id. at 1357. Approximately 0.2% of HBSP's worldwide revenue is generated by the sale of archived higher education materials in Georgia. (Ryan Decl. ¶ 15). Only ten copies of the Case Study were purchased by Georgia residents during the decade it was made available for online purchase. Defendants have not "continuously and deliberately exploited" the Georgia market, and the Case Study's circulation in Georgia was the "random, isolated, or fortuitous" byproduct of HBSP's worldwide online educational offerings. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 781 (1984) (finding personal jurisdiction where 10,000 to 15,000 copies of each allegedly libelous magazine were circulated in the forum state); see Gregory v. Mihaylov, No. 1:12-cv-2266, 2013 WL 75773, at *7 (N.D. Ga. Jan. 4, 2013) (finding no personal jurisdiction where allegedly libelous statements were posted online, including because the internet posts were a "far cry from circulating 10,000 magazines in Georgia").

Defendants' Motion to Dismiss is granted because the Court lacks personal jurisdiction over Defendants.  See Read v. Ulmer, 308 F.2d 915, 917 (5th Cir. 1962) ("It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss.").[5]  Plaintiff's Motion for Default Judgment also is required to be denied because "[a] court without personal jurisdiction is powerless to take

---

[5] Even if the Court had personal jurisdiction over Defendants, Plaintiff's Complaint still would require dismissal for failure to state a claim upon which relief may be granted.  Plaintiff's claims are time-barred.  See O.C.G.A. § 9-3-33; Mind Music, Inc. v. Block Enterprises, LLC, No. 1:12-cv-162, 2012 WL 6625754, at *5 (N.D. Ga. Dec. 18, 2012); Jahannes v. Mitchell, 469 S.E.2d 255, 258 (Ga. Ct. App. 1996).  His claim for intentional infliction of emotional distress also is inadequately pled because he fails to show Defendants' conduct was "extreme and outrageous (i.e., atrocious and utterly intolerable)" or "directed toward the plaintiff" personally.  Lively v. McDaniel, 522 S.E.2d 711, 713-714 (Ga. Ct. App. 1999); Ryckeley v. Callaway, 412 S.E.2d 826, 827 (Ga. 1992); see Ghodrati v. Stearnes, 723 S.E.2d 721, 723 (Ga. Ct. App. 2012) see, e.g., Munoz v. American Lawyer Media, L.P., 512 S.E.2d 347, 351 (Ga. Ct. App. 1999).  Plaintiff's claim for tortious interference also requires dismissal for failure to allege sufficient supporting facts.  See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc., 797 F.3d 1248, 1281 (11th Cir. 2015) (noting that a plaintiff is "required to provide more than a formulaic recitation of the elements of its tortious interference claim" (citation and internal quotation marks omitted)); Pullar v. Gen. MD Grp., No. 1:12-cv-4063, 2013 WL 5284684, at *9 (N.D. Ga. Sept. 17, 2013) (dismissing tortious interference claims for failure to allege sufficient supporting facts).

11

further action." Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).[6]

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [3] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment [6] is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

---

[6]   Plaintiff's Motion for Default Judgment also fails because default has not been entered in this case.  "Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."  10A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2682 (4th ed. Sept. 2016 Update); see Lindsay v. Bank of Am. Home Loans, No. 1:15-cv-2074, 2016 WL 4546654, at *5 (N.D. Ga. Feb. 1, 2016) (stating that "Rule 55 characterizes an entry of default and a default judgment as two distinct events" and "entry of default is a prerequisite to the default judgment").  "Plaintiff's request that default judgment be entered is, at absolute best, premature."  Lindsay, 2016 WL 4546654, at *5; see Sun v. United States, 342 F. Supp. 2d 1120, 1124 (N.D. Ga. 2004) ("Plaintiff's Motion for Default Judgment is premature because he has failed to obtain the entry of default, a prerequisite to a default judgment.") aff'd, 151 F. App'x 860 (11th Cir. 2005).  Even if default had been entered in this case, and assuming personal jurisdiction existed, Plaintiff still is not entitled to default judgment because his Complaint is not adequately pled.  See WFTV, Inc. v. Maverik Prod. Ltd. Liab. Co., No. 6:11-cv-1923, 2012 WL 12906175, at *1 (M.D. Fla. Dec. 27, 2012) ("[T]o support an entry of default judgment, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

**SO ORDERED** this 4th day of January, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE